```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
XAVIER ROPER and WILLIAM LOGAN LOCKETT,                     :
                                                            :
                              Plaintiffs,                   :
                                                            :
                -v-                                         :
                                                            :
THE CITY OF NEW YORK, a municipal entity; POLICE            :
OFFICER JEREMIAH WINTER; POLICE OFFICER                     :
MICHAEL SHULTIS; INSPECTOR TIMOTHY                          :
BEAUDETTE; DEPUTY INSPECTOR JOHN HART;                      :
POLICE OFFICER "LOMBARDO"; NEW YORK CITY                    :
SUPERVISING POLICE OFFICER "JOHN DOE";                      :
POLICE OFFICERS "JOHN DOES 1–10"; and other                 :
unidentified members of the New York City Police            :
Department,                                                 :
                                                            :
                              Defendants.                   :
                                                            :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6-7-17

15 Civ. 8899 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

On December 4, 2014, plaintiffs Xavier Roper and William Logan Lockett were arrested by officers of the New York City Police Department ("NYPD") in the vicinity of Times Square in Manhattan. Roper and Lockett bring this action under 42 U.S.C. § 1983, alleging that defendants, NYPD officers and the City of New York (the "City"), violated their federal constitutional rights in connection with the arrests. Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6).

For the reasons that follow, the Court grants defendants' motion.

I.   **Background**

   A.   **Factual Background**[1]

On the evening of December 4, 2014, demonstrators associated with the Black Lives Matter movement gathered to protest in Times Square. FAC ¶¶ 40, 92, 138. Black Lives Matter is a movement intended "to call attention to and change inequalities and ill effects created through systems of structural racism in American society," among them police misconduct and brutality directed at African Americans. *Id.* ¶ 121. On December 4, the Black Lives Matter protest concerned, in particular, the failure to indict an officer in the case of Eric Garner, an African-American man killed during an arrest on Staten Island in July 2014. *See id.* ¶¶ 135–39.

Roper went to Times Square on December 4 intending to document the protest. *Id.* ¶¶ 40–43. Roughly an hour after he arrived, Roper "moved into the street," which was closed to traffic, *id.* ¶ 54, in order "to photograph and video record the police action from a different perspective," *id.* ¶ 53. Sometime thereafter, defendant Inspector Timothy Beaudette ordered the protestors to move from the street to the sidewalk. *Id.* ¶ 55. As the result of barricades and a "wall of NYPD officers," Roper was unable to access the sidewalk in order to comply with the order. *Id.* ¶ 56. Roper heard an NYPD supervisor instruct his officers to "[j]ust take

---

[1] The Court draws these facts principally from plaintiffs' First Amended Complaint ("FAC"), Dkt. 23. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). The Court accepts all factual allegations in the FAC as true, drawing all reasonable inferences in plaintiffs' favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

somebody and put them in handcuffs."[2] *Id.* ¶ 60.  One of the officers then arrested Roper for "standing in the street," *id.* ¶ 62, and placed him in plastic "flex-cuffs," *id.* ¶ 76.

Lockett, a freelance photojournalist, also attended the December 4 protest in order to take photographs of the protestors, the police, and the interactions between the two. *Id.* ¶¶ 90, 92–93.  During the protest, in an effort to locate a restroom, Lockett crossed a street that had been closed off to traffic.  *Id.* ¶¶ 96–100.  Lockett did not use a crosswalk, as those had been blocked off by police officers.  *See id.* ¶¶ 97, 99.  Police officers, including defendant Officer Lombardo, arrested Lockett for disorderly conduct and placed him in plastic flex-cuffs.  *Id.* ¶¶ 101–02.

After their arrests, Roper and Lockett were each detained for several hours and eventually issued desk-appearance tickets.  *Id.* ¶¶ 82–83, 106–07.  At their court appearances, both plaintiffs received adjournments in contemplation of dismissal.  *Id.* ¶¶ 87, 108.  The charges against them have since been dismissed and sealed.  *Id.* ¶¶ 88, 108.

**B.    Procedural History**

On November 12, 2015, plaintiffs filed their original complaint, before the Honorable Analisa Torres.  Dkt. 1.  On February 25, 2016, they filed the FAC.  Dkt. 23.  A court-ordered mediation session was held on August 18, 2016, without success.  Dkt. 34.  On August 22, 2016, the case was referred to the Honorable Gabriel W. Gorenstein for all general pretrial matters.  Dkt. 35.

On October 4, 2016, Judge Torres denied defendants' request to stay discovery pending defendants' anticipated motion to dismiss.  Dkt. 46.  On October 6, 2016, defendants

---

[2] The unidentified supervisor and officers are named in the FAC as John Doe defendants.

3

then filed the instant motion to dismiss, which was fully submitted as of October 27.[3] Dkts. 47–51. On November 22, 2016, the case was transferred to the undersigned. On January 25, 2017, Judge Gorenstein granted a request by the City to stay discovery concerning plaintiffs' claims for municipal liability against it. Dkt. 66. After multiple extensions, fact discovery on the balance of plaintiffs' claims ended on March 23, 2017. *See* Dkt. 66. Judge Gorenstein denied plaintiffs' requests to further extend the discovery period. *See* Dkt. 66, 72.

## II. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is proper where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

In considering a motion to dismiss, a district court must "accept as true all factual claims in the complaint, and draw all reasonable inferences in the plaintiffs' favor." *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 157 (2d Cir. 2016). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the

---

[3] Along with their motion, defendants filed transcripts of the examination of each plaintiff conducted pursuant to New York General Municipal Law § 50-h. Fudim Decl. Exs. A–B, Dkt. 49. Defendants ask the Court to consider these transcripts in ruling on their motion. *E.g.*, Def. Mem. at 4, Dkt. 48. Because the FAC fails to state a claim on its face, *see infra* Part III, the Court need not consider the parties' arguments concerning the § 50-h transcripts, *Lienau v. Garcia*, No. 12 Civ. 6572 (ER), 2013 WL 6697834, at *1 n.1 (S.D.N.Y. Dec. 19, 2013).

4

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[R]ather, the complaint's '[*f*]*actual* allegations must be enough to raise a right to relief above the speculative level,' *i.e.*, enough to make the claim 'plausible.'" *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (second alteration and emphasis in *Arista*) (quoting *Twombly*, 550 U.S. at 555, 570).

### III. Discussion

Plaintiffs assert claims of false arrest and arrest in retaliation for protected speech in violation of their federal constitutional rights, as well as parallel false-arrest claims under New York law. FAC ¶¶ 155–205. The existence of probable cause to arrest is a complete defense to each of these claims. *See Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (false arrest); *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (retaliatory arrest).

Plaintiffs contend that defendants lacked probable cause to arrest them for failing to comply with orders to disperse (*i.e.*, disorderly conduct) because, to the extent that such orders were issued, the surrounding police barricades inhibited plaintiffs from dispersing. However, the relevant inquiry is "whether probable cause existed to arrest for any crime," not necessarily for the crimes cited by the officers or ultimately charged. *Marcavage v. City of New York*, 689 F.3d 98, 109 (2d Cir. 2012) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153–56 (2004)); *see also Zalaski v. City of Hartford*, 723 F.3d 382, 385 n.2, 394–95 (2d Cir. 2013) (applying same analysis to false-arrest and retaliatory-arrest claims). Here, defendants argue that they had probable cause to arrest the plaintiffs for offenses relating to pedestrian traffic. For the reasons discussed below, that is correct. The Court therefore need not assess whether plaintiffs' compliance with the dispersal orders was excused so as, potentially, to vitiate probable cause for disorderly conduct based on plaintiffs' failure to disperse.

5

"Probable cause exists 'when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (quoting *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013)). And, whether someone is committing a crime for which probable cause may permit arrest is ordinarily a question of state law. *Id.* (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) ("[w]hether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law" (alteration in original)).

New York law imposes several restrictions on the ability of pedestrians to lawfully walk in the street. Relevant here, one New York statute directs that "[w]here sidewalks are provided and they may be used with safety it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway." N.Y. Veh. & Traf. Law § 1156(a) (McKinney, Westlaw through 2017 ch. 23). A violation of this provision is defined as a "traffic infraction" under New York law. *See id.* § 1101. Separately, a New York City traffic rule forbids "enter[ing] or cross[ing] a roadway at any point where signs, fences, barriers, or other devices are erected to prohibit or restrict such crossing" as well as "cross[ing] a roadway except at a crosswalk on any block in which traffic control signals are in operation at both intersections bordering the block." N.Y.C. Comp. Codes R. & Regs. tit. 34, § 4-04(c)(1), (3) (Westlaw through Mar. 31, 2017).

Defendants contend they had probable cause to arrest plaintiffs for violating these traffic rules. Plaintiffs do not respond directly to defendants' argument on this point. Instead, they focus on the lawfulness of the dispersal orders and address the § 50-h transcripts from the examinations of the plaintiffs. *See* Pl. Opp'n at 20–21, Dkt. 50; *see also supra* note 3. But

defendants' claim of justification to arrest has a solid foundation.  Probable cause for these traffic violations is established on the face of the FAC, even assuming that compliance with the ensuing dispersal orders was not realistically possible.  As pled, Roper and Lockett each voluntarily entered the street from the sidewalk.  *See* FAC ¶¶ 54–55, 99–100.  And defendants, observing each plaintiff walking in a street with an available sidewalk and designated crosswalks, had knowledge sufficient to warrant a person of reasonable caution in the belief that plaintiffs were in violation of the aforementioned traffic rules.  *See, e.g.*, *Gonzalez v. City of New York*, No. 14 Civ. 7721 (LGS), 2017 WL 149985, at *1–2 (S.D.N.Y. Jan. 13, 2017).

That the streets in question were closed to vehicular traffic does not vitiate probable cause.  The more serious offense of disorderly conduct—a criminal misdemeanor—does require as an element that a defendant intend to obstruct vehicular or pedestrian traffic.  *See, e.g.*, *People v. Carty*, 49 N.Y.S.3d 600, 602 (App. Div. 2016) (per curiam) (citing N.Y. Penal Law § 240.20(5) (McKinney, Westlaw through 2017 ch. 23)).  But to establish probable cause for the traffic violations listed above, defendants were not required to identify the presence of traffic or an intent to obstruct it; these provisions permit law enforcement to restrict pedestrian traffic to sidewalks even where they are simultaneously diverting vehicular traffic.

To be sure, courts have understandably expressed some skepticism about justifying custodial arrests undertaken for other reasons based on violations of traffic laws that likely are rarely the subject of arrests.  But it is well-settled that probable cause is determined objectively by the existence of evidence that an offense, including a traffic offense, has been committed, not by the officers' subjective basis for effecting the arrest.  *See Shamir v. City of New York*, 804 F.3d 553, 557 (2d Cir. 2015) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)).

Further, binding Second Circuit precedent holds that an arrest for just such an offense by a pedestrian is permissible if properly supported by probable cause. *See, e.g.*, *United States v. McFadden*, 238 F.3d 198, 201–04 (2d Cir. 2001); *Gonzalez v. City of New York*, 2017 WL 149985, at *2 (citing *United States v. Scopo*, 19 F.3d 777, 781–82 (2d Cir. 1994)); *cf. Glasgow v. Beary*, 2 F. Supp. 3d 419, 425 (E.D.N.Y. 2014) (holding defendant entitled to qualified immunity when defendant arrested plaintiff after observing plaintiff commit a violation of the New York traffic code, as "[g]iven the uncertain status of the law, it cannot be said that plaintiff's Fourth Amendment right to be free from a custodial arrest for a non-criminal traffic infraction was 'clearly established' in January 2012"); *People v. Robinson*, 767 N.E.2d 638, 646–47 (N.Y. 2001) (declining to distinguish between criminal and traffic violations for the purposes of searches and seizures under New York law). Although New York law defines a "traffic infraction" as "not a crime," N.Y. Veh. & Traf. Law § 155, it is also "deemed an offense" for "purposes of arrest without a warrant" under N.Y. Crim. Proc. Law § 140. *Id.* Under New York law, a traffic infraction is defined as a "petty offense," *id.* § 1.20(39), and a police officer may arrest a person for a "petty offense" without a warrant when the officer has probable cause to believe that the person has committed the offense, *id.* §§ 140.10(1)(a), 140.10(1)(2).[4] As such, such an arrest satisfies constitutional requirements under the Fourth Amendment. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

---

[4] The circumstances under which New York law permits a police officer to arrest a person for a petty offense are subject to certain restrictions not applicable here, such as that the petty offense have been committed or believed by the police officer to have been committed "within the geographical area of such police officer's employment or within one hundred yards of such geographical area. . . ." N.Y. Crim. Proc. Law § 140.10(2)(a).

Here, plaintiffs' arrests, unavoidably, were supported by probable cause, which is fatal to their false- and retaliatory-arrest claims. *People v. Cortes*, 382 N.Y.S.2d 445, 447 (Sup. Ct. 1976) (citations omitted) ("a police officer is empowered to arrest a person for any traffic infraction committed in the officer's presence, even though the [New York] courts have expressed a preference for the use of an appearance ticket in such situations").

With plaintiffs having failed plausibly to allege the violation of any of their constitutional rights, their derivative § 1983 claims based on failure to intervene and municipal liability must also be dismissed. *See Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (imposing failure-to-intervene liability only where a defendant "fails to intercede in . . . [a] constitutional violation"); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (finding no municipal liability where there was "no underlying constitutional violation").

## CONCLUSION

For the reasons stated above, the Court grants defendants' motion to dismiss the FAC for failure to state a claim. The Clerk of Court is respectfully directed to close the motion pending at Dkt. 47 and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: June 7, 2017
New York, New York